**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| TERRI D. COLE,<br>Personal Representative of<br>The Estate of Winfred L. Crosby,<br>Plaintiff,<br>v.<br><br>BASF CORPORATION, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>NO. 0:22-cv-62225-RKA |

**DEFENDANT RTX CORPORATION'S MOTION TO EXCLUDE AND LIMIT THE OPINIONS OF PLAINTIFF'S EXPERTS: DR. ARTHUR FRANK, DR. BRENT STAGGS, MARK COLLELA, AND STEVEN MARKOWITZ**

Defendant, RTX Corporation f/k/a United Technologies Corporation ("RTX" or "Defendant"), by and through undersigned counsel, hereby moves to exclude and limit the opinions of Plaintiff's experts: Dr. Arthur Frank, Dr. Brent Staggs, Mark Colella, and Steven Markowitz, and in support thereof states as follows:

## I. INTRODUCTION

Defendant, RTX Corporation (RTX) asks this Court to exclude the specific causation opinions[1] of Plaintiff's experts Drs. Arthur Frank, Brent Staggs, Mark Colella as well as the expert opinion of Gerald Markowitz. These opinions must be excluded because:

- **The cumulative exposure theory is unreliable under *Daubert* and Rule 702**. These opinions disregard dose, meet none of the *Daubert*-reliability factors, and improperly rely on *ipse dixit* rather than sufficient facts and data.

- **Plaintiff's experts' cumulative exposure opinions contravene Florida law and Rule 403**. The cumulative exposure theory nullifies the substantial factor requirement under Florida law and improperly shifts the burden of proof on causation.

- **Gerald Markowitz is unqualified and a conduit for hearsay:** Dr. Markowitz is a historian, who knows nothing about Pratt & Whitney, jet engines, or the Air Force. He

[1] RTX is not asking this Court to bar Plaintiff's experts from offering opinions on general causation at this time. RTX reserves the right to assert any available objections or arguments at trial.

is not trained or educated in the medical or scientific literature he cites, and his "expert opinion" is nothing more than an unqualified and improper regurgitation of hearsay statements.

For these reasons, and those stated below, this Court should grant RTX's Motion.

## II. BACKGROUND

### A. Procedural background.

Plaintiffs Winfred and Anita Crosby filed this case on November 4, 2022, against multiple Defendants in state court, alleging asbestos exposure caused Mr. Crosby's mesothelioma. *See* Pls. State Court Compl., ¶ 2, Ex. A to ECF No. 1. RTX removed the case to federal court. ECF Nos. 1, 27. Crosby passed away in June 2023. Plaintiff Terri Cole was substituted as the personal representative. She then filed a First Amended Complaint, alleging claims for negligence and strict liability. ECF No. 81.

### B. Crosby's service in the Airforce.

Crosby served in the Air Force working largely as a jet engine mechanic. He served at McCoy Air Force Base in Orlando, Florida from 1960 to 1964, working on the flight line and in the hangar servicing aircraft engines. While in the Air Force, one of his tasks was maintaining Pratt & Whitney J57 jet engines installed on Boeing B-52D aircraft. Crosby Tr. [3/7/2023] at 28 – 31; 35, Exhibit A. Crosby allegedly encountered gaskets (3/7/23 Tr. at 70-72), clamps (at 89-91), blankets (at 57-63), adhesives (80-82), and "fire sleeves" (96) associated with the J57 engine, which he merely assumed, without knowing, contained asbestos. He did not know who manufactured these components, but agreed the Air Force specified them and they came through Air Force Supply.

### C. Asbestos exists in the ambient air at background levels.

"Asbestos" is a commercial and regulatory term for a group of fibrous silicate minerals that occur naturally in the earth's crust. These minerals fall into different families, including the serpentine and amphibole families. *See* 29 C.F.R. § 1910.1001 (defining asbestos). "Asbestos" fibers occur naturally and are ubiquitous. Thus, all persons living in the United States breathe "asbestos" fibers from the ambient air over the course of their lifetime and have "asbestos" fibers in their lungs. In fact, an individual may have hundreds of billions of fibers in their lungs at their time of death, even if that individual never inhales respirable fibers from work with or around asbestos fibers. This is what Drs. Frank and Staggs call "background." *See* Deposition of Arthur Frank at 15-16, Exhibit B; Deposition of Brent Staggs, , at 86, 89, Exhibit C. Virtually all testifying experts agree there is no scientific proof that background levels of "asbestos" exposure cause cancer. *See* Ex. B at 110-111 [Frank Dep.]; Ex. C at 112:10-12 [Staggs Dep.]..

D. <u>Plaintiff's experts' opinions.</u>

1. <u>Dr. Arthur Frank</u>

Dr. Frank's opinions are contained in his (1) December 11, 2023, deposition, and (2) a 1½ page report dated March 9, 2022, (Exhibit D) which attaches a generic December 2016 Affidavit which he attempts to "incorporate." Affidavit of Dr. Frank (Dec. 20, 2016), Exhibit E. Dr. Frank's report has no opinions specific to Pratt & Whitney engines. Instead, Dr. Frank provides his standard so-called specific causation opinion based on "cumulative exposure." Ex. D at 1 ("The cumulative exposures that [Crosby] had to asbestos from any and all products, containing any and all fiber types, would have contributed to his developing this malignancy which caused his death."); Ex. B at 34 [Frank Dep.].[2]

[2] Dr. Frank's Affidavit expound on his cumulative exposure opinion. *See, e.g.*, Ex. E at 209, ¶ 400; *id*. at 144, ¶ 294, n. 556; *id.* at 184, ¶ 357-58; *id.* at 209, ¶ 400.

Dr. Frank formulates his "opinions" for asbestos litigation after a brief review of a case summary and client data sheet prepared for him by Plaintiff's counsel. Ex. B at 21-22, 46-47 [Frank Dep.]. In this case, he also eventually looked at two pathology reports and a few unidentified pages of deposition testimony. Ex. B at 17-21 [Frank Dep.]. Other than that, Dr. Frank did not rely on any other fact-specific evidence to support his so-called specific causation opinion. Tellingly, he admits his cursory methodology for litigation lacks the same intellectual rigor that he would use with patients in clinical settings. Deposition of Frank in *Fend*, at 85-87 (Oct. 8, 2020), Exhibit F. Still, he intends to hold that Crosby's alleged work with component parts on a Pratt & Whitney jet engine was a substantial factor in causing his mesothelioma. This opinion is unreliable and unhelpful to the jury.

2. Dr. Brent C. Staggs.

Dr. Brent Staggs is a physician and board-certified pathologist. He prepared an expert report detailing his views on the cause of Crosby's mesothelioma. He also attached a generic non-case specific affidavit, which describes his standard "basic opinions on asbestos-related disease." Staggs Affidavit, Exhibit G. Dr. Staggs opines, like Dr. Frank, that mesothelioma is caused by the cumulative exposures to asbestos that a person receives during their lifetime. He defines "dose" as "the amount of asbestos inhaled over a given time period" and stated that "[a]ll of the asbestos [exposures], including what might be naturally occurring background, contributes to your cumulative exposure. Your cumulative exposure is scientifically and medically what's considered the cause of your mesothelioma. . . . But naturally occurring background . . . I would always consider it to be insignificant." Ex. C at 86:1-9 [Staggs Dep.]. Staggs also claims the dose one receives breathing background levels of asbestos in the ambient air does add to one's cumulative dose, but somehow does not cause disease and does not increase one's risk. Ex. C at 86:12, 112, 126-127 [Staggs Dep.]. Dr. Staggs offers conclusions that he has subjectively reached without any

identifiable or repeatable scientific methodology to determine which alleged exposures are and are not causative.

3. Dr. Mark Colella.

Dr. Mark Colella is a radiologist who believes he needs merely a "history of asbestos exposure" and sufficient latency to link a person's malignancy to asbestos. Trial Testimony of Dr. Colella, *Porzucek* (Feb. 2, 2023) at 107, Exhibit H. He did not offer any "causation" opinions until rebuttal. Dr. Colella Radiology Reports, (March 13, 2023), Exhibit I. Like others, Dr. Colella holds the opinion that each and every exposure from an asbestos-containing product is a substantial contributing factor in the development of an asbestos-related disease. Deposition of Dr. Colella in *Brooks* at 11, 43 (June 27, 2005), Exhibit J. Contrary to common sense, he opines that there is no minimum dose of exposure a person needs to have before he considers it a substantial contributing factor. Deposition of Dr. Colella taken in *Gilmore*, at 17 (Nov. 13, 2002), Exhibit K. He offers this opinion based merely on a "history of exposure" prepared by Plaintiff's attorneys. Deposition of Dr. Colella at 46-47 (Dec. 8, 2023), Exhibit L.

4. Gerald Markowitz's.

Gerald Markowitz is a historian trained in research focused on how and where to find old things in various locations, including a library. He is not a medical doctor, epidemiologist, toxicologist, radiologist, public health worker, or industrial hygienist, nor does he have any training or expertise in any of those areas or in asbestos risk assessment, the U.S. Military, or the design or manufacture of jet engines. Deposition of Gerald Markowitz at 22-24, Exhibit M [Markowitz Dep.]. Markowitz has no background or expertise that could qualify him to testify as an expert in these areas generally at trial, let alone as to Pratt & Whitney's jet engines. In fact, he admitted that he never studied or tested a Pratt & Whitney jet engine. Ex. M at 24. Nor has he done any review of the Air Force, the U.S. Military, or the U.S. Navy. Ex. M at 29-31. Instead, he merely

reviewed printed materials related to the medical and scientific community's knowledge about the alleged health hazards of exposure to airborne asbestos fibers. Based on that review, he purports to opine on what ***RTX*** (which is not a medical or scientific organization) historically could have or should have known about the same.

## III. LAW & ARGUMENT

### A. Legal Standard.

Rule 702 and *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993) govern admissibility of expert testimony. Both require the trial court to act as a gatekeeper. *See Seamon v. Remington Arms Co., LLC*, 813 F.3d 983, 988 (11th Cir. 2016). This gatekeeping function is critical. To be sure, gatekeeping ensures that "speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation expert testimony." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)). In fact, this function is so critical that the Advisory Committee amended Rule 702 this year "to emphasize that expert testimony may not be admitted ***unless the proponent demonstrates*** to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 (2023 Amendment Advisory Notes (1) (emphasis added)). As the Amendment makes clear, it is the trial court that must ensure the expert opinions proffered are reliable and admissible because lay jurors cannot evaluate the reliability of an expert's methodology:

> Judicial gatekeeping is essential because just as jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion, jurors may also lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support.

Fed. R. Evid. 702 (2023 Amendment Advisory Notes (2)).

Thus, under Rule 702, expert testimony is admissible only if, "the proponent demonstrates to the court that it is more likely than not that" the expert's opinion (1) will help the trier of fact to understand the evidence or to determine a fact in issue; (2) is based on sufficient facts or data; (3) stems from reliable principles and methods; and (4) reflects a reliable application of the principles and methods to the facts of the case. None of Plaintiff's experts' opinions meet this standard.

B. Plaintiff's experts' specific causation opinions are inadmissible under Rule 702.

Plaintiff's experts, Dr. Frank, Dr. Staggs, and Colella, purport to offer specific causation opinions. Each is founded on the cumulative exposure theory. This theory is unreliable and inadmissible.

1. Cumulative exposure theory is unreliable under *Daubert* and Rule 702.

(a) Courts throughout the country have held the cumulative exposure theory is unreliable and inadmissible.

Toxicology rests on the "fundamental tenet" that the dose makes the poison. *Mancuso v. Consolidated Edison Co. of New York, Inc.*, 967 F. Supp. 1437, 1445 (S.D.N.Y. 1997) (citing Federal Judicial Center: Reference Manual on Scientific Evidence, "Reference Guide on Toxicology," p. 185 (1994)). "Dose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect." *McClain v. Metabolife Int'l Inc.*, 401 F.3d 1233, 1241 (11th Cir. 2005). An expert who avoids or neglects this principle of toxic torts without justification casts suspicion on reliability. *Id.* at 1241-42 (internal citation omitted) ("[s]cientific knowledge of the harmful level of exposure to a chemical plus knowledge that plaintiff was exposed to such quantities are minimal facts necessary to sustain the plaintiff's burden....").

Cumulative exposure theory fails to even attempt to perform this assessment. The reason is simple: cumulative exposure theory ignores the principle of dose. Rather, cumulative exposure

theory merely presumes that all occupational exposures are "above background" and all "exposures above background," no matter how small, are substantial contributing factors in the causation of mesothelioma. The theory requires no effort to determine whether a work exposure is in fact "above background." And it does not require one to compare the lifetime dose received from the ambient air to the dose, if any, from a product at issue. This is not scientific. Rather, it is a reverse-engineered conclusion masquerading as a scientific methodology.

Given this, courts have rejected the notion that dose does not matter and have required reliable scientific evidence linking the plaintiff's alleged exposure from a product to a dose shown to cause the injury. *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 677 (7th Cir. 2017) ("more than thirty other federal courts and state courts have held that this cumulative/"any exposure" theory is not reliable."); *Doolin v. Ford Motor Co.*, No. 3:16-CV-778-J-34PDB, 2018 WL 4599712, at *12 (M.D. Fla. Sept. 25, 2018) (collecting cases) (the "cumulative" exposure theory and its iterations have been "extensively discussed and criticized as scientifically unsound by state and federal courts throughout the country.").

(b) Cumulative exposure fails the *Daubert* reliability factors.

Even if these controlling and persuasive authorities were not enough, cumulative exposure theory also fails *Daubert*'s reliability factors. In *Daubert*, the Supreme Court listed four non-exclusive factors for consideration in assessing reliability: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been submitted to the scrutiny of the scientific community through peer review or publication; (3) whether there is a known or potential rate of error; and (4) whether the theory or technique is generally accepted in the scientific community. *Daubert*, 509 U.S. at 594. Courts have expanded on this list by considering other factors for assessing reliability, including whether the method consists of a testable hypothesis; whether the expert ruled out other alternative explanations; and the nonjudicial uses to which the

method has been put. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1047 (9th Cir. 2014). Cumulative exposure theory, and opinions based on the same, fail all factors and the opinions must be excluded.

***First***, the cumulative exposure opinion is an untested and untestable hypothesis.[3] All individuals are exposed to background levels of asbestos in the ambient air. Thus, generating a study comparing those exposed to background levels, to those not, to determine whether there is an excess rate of mesothelioma cannot be done. Recognizing this contradiction, courts throughout the country find the "any exposure" theory fails this factor. *See, e.g.*, *Smith v. Ford Motor Co.*, No. 2:08-cv-630, 2013 WL 214378, at *5 (D. Utah Jan. 18, 2013); *Davidson v. Georgia Pac. LLC*, 2014 WL 3510268, at *5 (W.D. La. July 14, 2014) (finding the "every exposure" theory is "not testable, and consequently cannot have an error rate," and the expert testimony, based on the theory, internally inconsistent and inadmissible under Rule 702 and *Daubert*); *Sclafani v. Air & Liquid Sys. Corp.*, 2013 WL 2477077, at *4-5 (C.D. Cal. May 9, 2013).

***Second***, peer reviewed literature does not support cumulative exposure. To be sure, there is nothing in the peer reviewed or published literature that states every exposure above background contributes to an asbestos-related disease. Frank Deposition at 173-74, in *Fresa*, Case No. 1882 (Pa. Ct. Common. 2013), Exhibit N; Deposition of Brent Staggs, *Boyd*, No. 19-CI-00941, (Ky. Pike Cnty.) (Apr. 1, 2021), at 82, 90, Exhibit P. Nor is there peer-reviewed literature stating that any exposure, no matter how small, contributes to one's risk for developing mesothelioma. This is grounds for excluding cumulative exposure theory and opinions relying on it. *See, e.g.*, *McClain*,

[3] Dr. Frank himself has admitted this impossibility. Deposition of Arthur Frank, in In Re Asbestos Products Liability Litigation (No. IV) at 146 (Jan. 25, 2012), Exhibit O.

401 F.3d at 1251 (affirming exclusion of expert on general causation where expert offered no epidemiological, clinical trial, animal study, or other peer-reviewed data to support his opinion).

***Third***, there is no known potential rate of error for cumulative exposure opinions. Failure of a methodology to allow the court to consider the known or potential rate for error is a significant sign of unreliability. *Daubert*, 509 U.S. at 594. If there have been no testing or experiments, there can be no known or potential rate of error. *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 298 (8th Cir. 1996). As noted, cumulative exposure theory has not, and cannot, be tested. This factor supports exclusion.

***Fourth***, cumulative exposure does not require experts to rule out alternative causes. This is a key indicium of reliability. Yet cumulative exposure does not require this consideration to opine on specific causation. Instead, this theory allows experts to consider one thing: whether an exposure, "above background" occurred. If it did, that is enough—it makes no requirement for consideration of alternative causes. This supports exclusion.

***Fifth***, cumulative exposure was generated for litigation, not independent of it. *See*. Expert opinions generated for the purpose of litigation have less credibility than opinions generated outside of it. *See Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir.1995); *Daubert II*, 43 F.3d at 1317 (noting "[o]ne very significant fact to be considered is whether" opinions were generated naturally or for litigation and testifying). Cumulative exposure, however, exists only for litigation – as even Dr. Frank admits it is unsuitable for medical practice [cite]. It was developed by creative litigation experts, not learned scientists, to survive *Daubert* challenges after plaintiffs' experts faced exclusion by many federal courts. *See supra* Part II.A.1.

In sum, the cumulative exposure theory fails all *Daubert* reliability factors and expert opinions relying on this theory as a "methodology" must be excluded.

2. Dr. Frank, Dr. Staggs, and Dr. Colella rely on the cumulative exposure theory and must be excluded.

Despite the trend, and the failure of cumulative exposure theory to meet the rigors of Rule 702, Plaintiff's experts continue to rely on this theory to dodge their responsibility and attempt to prove causation—thereby ignoring scientific principles. To be sure, no expert in this case attempts to determine whether Crosby's alleged work around an asbestos-containing component part made by someone else and incorporated into a Pratt & Whitney engine reached a dose sufficient to be a substantial factor in causing his mesothelioma. Rather, all experts failed to present evidence showing Crosby's alleged exposures to Pratt & Whitney products exceeded the levels his body could process without toxicity. Nor did they show that those purported exposures would produce a different result than breathing a background level of asbestos found in the ambient air over the course of a lifetime. They attempt to side-step this failure by relying on the cumulative exposure theory. Their opinions are inadmissible and unreliable.

(a) Dr. Frank's cumulative exposure specific causation opinion is unreliable and inadmissible.

Dr. Frank does not consider or assess dose in litigation. This fundamental failure has led to the exclusion of his specific causation opinion. In fact, in the last five years, multiple federal courts have excluded Dr. Frank, finding his cumulative exposure opinions were unreliable and inadmissible under Rule 702.

First, in *Krik*, the Seventh Circuit held that Dr. Frank's cumulative exposure opinions were inadmissible and scientifically unreliable because they disregarded dose. *Krik*, 870 F.3d at 674–75 (citing *Krik v. Crane Co.*, 76 F. Supp. 3d 747, 753 (N.D. Ill. 2014) (J. Lee)). As the court explained, Dr. Frank believes that "any exposure to asbestos fibers whatsoever, regardless of the amount of fibers or length of exposure, constitutes an underlying cause of injury to the exposed individual." *Id.* The Northern District of Illinois barred this opinion because it is "not tied to a

specific quantum of exposure attributable to the defendants but was instead based on his medical and scientific opinion that every exposure is a substantial contributing factor to the cumulative exposure that causes cancer." *Id.* (citing *Krik v. Owens-Illinois, Inc.*, 2015 U.S. Dist. LEXIS 112163, at *1 (N.D. Ill. Aug. 25, 2015)). Specifically, the court concluded that causation requires an expert to connect exposure with a methodology that considers dose to determine whether that exposure caused the harm. *Id.* at 673.

On appeal, the Seventh Circuit affirmed. It noted that the cumulative exposure opinion, like the "each and every exposure" opinion, is unreliable because neither opinion relies "upon any particular dose or exposure to asbestos[.]" *Id.* at 674–75. Instead, both theories find all exposures, no matter how small, caused or contributed to the disease and the cumulative dose. *Id.* In other words, "it is impossible to determine which particular exposure to carcinogens, if any, caused an illness." *Id.* at 677. Thus, the court held Dr. Frank's opinions based on the cumulative exposure theory were unreliable and inadmissible. *Id.* at 678.

Nevertheless, Dr. Frank tried to offer the same cumulative exposure opinions he offered in *Krik,* and offers here, in *Johnson v. Edward Orton, Jr. Ceramic Found.*, No. 19-CV-06937, 2021 WL 5493231, (N.D. Ill. Nov. 23, 2021). And again, the Northern District of Illinois excluded Dr. Frank, finding his opinions were unreliable. As the court explained:

> Dr. Frank broadly opines that "cumulative exposures that [the Plaintiff] had to asbestos, from any and all products, containing any and all fiber types, would have been contributory," and that "[a]ll of his exposures would have been at levels above background, would have been medically significant, and therefore medically causative of his mesothelioma." Dr. Frank ***does not consider the lengths of exposures to any particular defendant's product***, ***nor the amount of asbestos contained in any product to which [the Plaintiff] was exposed***.

*Id.* at *3 (emphasis added).

As the *Johnson* court explained, Dr. Frank's wholesale failure to assess dose or exposure rendered Dr. Frank's causation opinions unreliable and inadmissible under Rule 702 and *Daubert* because they were "indistinguishable from the ones the Seventh Circuit [excluded in] *Krik*." *Id.*

Dr. Frank made no effort to cure his methodological defects in this case, either. In fact, he readily admits that he has not changed his methodology in the last 45-years:

> Q. Okay. Let me ask you. Dr. Frank, nothing has changed in how you assess asbestos-related disease and the methodology you use to assess asbestos-related disease in the 45 years you've been doing it, true?
>
> A. True. It's based basically on the weight of the evidence, making use of, you know, various ways of looking at scientific evidence, including, you know, the work of Bradford Hill and others.
>
> Q. But you have changed the language that you use to express your opinion in whether an asbestos exposure has caused an asbestos-related disease, true?
> A. Because of rulings of courts I have changed my language and I change my language in my reports depending on what jurisdiction is involved. Different jurisdictions require different language.

Ex. B at 100-101 [Frank Dep.].

In other words, Dr. Frank continues to rely on cumulative exposure theory and cases applying it. The only reason the language changes is because he is trying to side-step exclusion. His opinions in this case make clear his supposed specific causation opinion is founded on the unreliable cumulative exposure theory, claiming that: "If there's asbestos in a breath, there's no such thing as an insubstantial amount of asbestos. . . . Each breath contributes to the cumulative exposure, which at the end of the day is what causes the disease." Ex. B at 102-03 [Frank Dep.]. His succinct admission makes clear that Dr. Frank made no effort to assess Crosby's dose qualitatively or quantitatively, and instead uses the cumulative exposure theory to sidestep his obligation to undertake a scientific review. Dep. at 106-110. His opinions are just his subjective belief and are not the product of reliable principles or scientific methodologies. Plaintiff cannot

carry her burden under Rule 702, and this Court must exclude Dr. Frank's specific causation opinions at trial.

(b) Dr. Staggs' specific causation opinions are based on the cumulative exposure theory, which is inadmissible.

Dr. Staggs relies on the cumulative exposure theory as well. That is, rather than rely on "reliable principles and methods," Fed. R. Evid. 702(c), Dr. Staggs just assumes that "all exposures and all products play[ ] a contributing role" and he merely "rules all exposures in." *Smith*, 2013 WL 214378, at *2-3. According to Dr. Staggs, all exposures, no matter if they are below background or above it, contribute to the cumulative exposure, so you cannot rule any of them out. Ex. C at 86, Ex. P at 86-87 [Staggs Dep.]. Dr. Staggs concedes that he has no data to support his opinions ("quantatively, no"), so he is forced to assume both asbestos-content (Ex. C at 220:7-17) and that each "individual exposure[s] . . rise[s] to a similar level of other exposures in the exposure context." Ex. C at 244:19-23 [Staggs Dep.]; Ex. P at 77 (assuming "that [all exposures] have similar frequency and regularity"). This unscientific assumption leads directly to his circular opinion and conclusions that "[w]hen it has similar *significance*, it carries *significance* and it becomes *significant*." Ex. P at 45 [Staggs Dep.] (emphasis added)).

Put simply, Dr. Staggs' opinions are the same as the specific causation opinions excluded in *Krik*. Unsurprisingly, courts have excluded Dr. Staggs from providing these opinions because they are unreliable and inadmissible. For example, *In re: New York City Asbestos Litigation*, No. 190287/2014, 2019 WL 1580155 (N.Y. Sup. Ct. Apr. 12, 2019), excluded his opinions because, just as here, he failed to distinguish between the exposures or determine the actual dose. The court explained that "Dr. Staggs' report and affidavit do not distinguish exposures to ABI's vinyl asbestos floor tiles from any of the other exposures identified by [Plaintiff], including the seven other brands of vinyl asbestos floor tiles he recalled working with." *Id.* at *7. And, as here, "Dr.

Staggs fail[ed] to quantify [the plaintiff's] exposure to" the defendant's products. Thus, his opinion "fail[ed] to raise an issue of fact on specific causation." *Id.*

Similarly, in *Settlemyer v. Borg-Warner Morse Tec, LLC*, No. 1:19-cv-00344-MR-WCM, 2021 WL 5778395 (W.D.N.C. Dec. 6, 2021), the court criticized the plaintiffs' experts, including Dr. Staggs, in finding their opinions were merely speculation" because they failed "to calculate the particular dose exposures attributable to each Defendant[.]" *Id.* at *3. As here, Plaintiff's experts, including Dr. Staggs, found that "regardless of what the particular calculation of exposure would be, it was sufficiently substantial." *Id.* at *4. The court explained this methodology was unreliable because it "cannot be tested [and] it has no known error rate." *Id.* Thus, the court excluded Dr. Staggs' specific causation opinion because "no analysis is offered to identify the particular dose attributable to any particular defendant." *Id.* at *5.

True to form, in this case Dr. Staggs also does not consider or assess Crosby's dose. First, he claims that, as a physician, he cannot and will not quantitatively assess Crosby's dose. Ex. C at 60:3-8 [Staggs Dep.]. Second, he does not qualitatively assess Crosby's dose as it relates to Pratt & Whitney engines. Instead, he tries to nuance his opinions by stating that any exposure is causative as long it was "significant." But he has no methodology, let alone a reliable one, to conclude or classify any exposure as "significant." Ex. P, Staggs Boyd Dep. at 71-72. Instead, Dr. Staggs starts with the premise that mesothelioma exists, and from there he reverse engineers the occupational history of a patient based merely on what a plaintiff's lawyer tells him to subjectively determine whether the exposures were "significant" Ex. C at 56:2-14 [Staggs Dep.] .

Thus, if there is a diagnosis, and he is told about an occupational exposure, Dr. Staggs will axiomatically opine that it was "significant" and a cause of the injury. Ex. C at 241-242 [Staggs Dep.] (in determining whether occupational exposures are significant "[a]re any of those exposures

significant or, you know, compared to one another.")"). These opinions are not based on any methodology, let alone a reliable one. Rather, they are based on Dr. Staggs' subjective belief based on information selected and provided by lawyers,[4] which is the only foundation for his so-called specific causation opinions. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 137 (1997) ("nothing in either *Daubert* or the [Federal Rules] requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

In sum, Dr. Staggs specific causation opinion relies on the cumulative exposure theory which is unreliable. This Court should exclude it.

(c) Dr. Colella's specific causation opinion is founded on cumulative exposure and is unreliable and inadmissible.

Dr. Colella's specific causation opinions rely on the same cumulative exposure theory and are also inadmissible. Like Dr. Staggs, Dr. Colella claims that all "significant exposures" are a substantial contributing factor. Dr. Colella provides no methodology, let alone a reliable one, for determining when an exposure meets this standard. Dep. at 55-57. Dr. Colella offers no quantitative, qualitative, or comparative analysis of Crosby's alleged work with or exposure to asbestos from Pratt & Whitney jet engines (if any). In fact, even though there is no scientific basis for it, Dr. Colella believes that a day, an hour, or even ambient air is enough, "as long as you are inhaling that potent carcinogen, and that is interacting with your lungs, it is significant." Ex. L at 73-74 [Colella Crosby Dep.].

Dr. Colella makes no effort to analyze dose. And as explained above, cumulative exposure theory cannot "plug the impermissible gap in Dr. [Colella's] reasoning from the general causation proposition that exposure to asbestos increases the risk of mesothelioma, to the specific causation

---

[4] Dr. Staggs admits his specific causation opinion is based on certain "subjective" assessments. *See, e.g.*, Ex. C at 89:2-8 [Staggs Dep.]; Ex. P Boyd Staggs Dep. at 74-76, 115.

opinion that *in this case* [Crosby's] exposure to [component parts allegedly incorporated into Pratt & Whitney jet engines were] a cause of his mesothelioma giving rise to liability." *Comardelle v. Pennsylvania Gen. Ins. Co.*, 76 F. Supp. 3d 628, 635 (E.D. La. 2015). There is no support for his specific causation opinions as they relates to Pratt & Whitney. His opinions are unreliable and must be excluded.

3. <u>Plaintiff's experts' opinions are not helpful under Rule 403.</u>

Plaintiff's experts' specific causation opinions seek to mislead the jury into rendering a verdict based on an opinion of causation that contradicts the substantial factor causation standard, and should be excluded. In asbestos cases, to prove causation, a plaintiff must prove that a particular defendant's asbestos or asbestos-containing product helped cause his injuries. *Smith v. Carlisle Indus. Brake & Friction, Inc.*, No. 1D21-2753, 2023 WL 4924143, at *3 (Fla. Dist. Ct. App. Aug. 2, 2023) (quoting *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984) ("[T]he plaintiff ... must introduce evidence which affords a reasonable basis for the conclusion that it is *more likely than not* that the *conduct of the defendant* was a substantial factor in bringing about the result.").

None of Plaintiff's experts here performed an analysis that would allow them to hold that any specific defendant, let alone Pratt & Whitney, helped cause Crosby's injury. Plaintiffs' experts offer no analysis to identify the dose attributable to any particular product or defendant. *Supra* Part III.B.2. Instead, they each proffer an opinion on "substantial factor" causation which resembles a legal conclusion and thus does not help the jury.

Additionally, using this cumulative exposure opinion and legal conclusion, Plaintiff's experts essentially flip the causation standard and burden of proof, by impermissibly shifting the burden back to defendants to disprove that Crosby's exposure was a substantial factor. *Krik*, 870 F.3d. at 677 (explaining cumulative exposure "[r]equir[es] a defendant to exclude a potential cause

of the illness," which, "improperly shifts the burden to the defendants to disprove causation and nullifies the requirements of the 'substantial factor' test."). This is not only contrary to the law, it also prejudices RTX and would mislead the jury on the correct standard and burden of proof on causation. *See Smith v. Ford Motor Co.*, No. 2:08-CV-630, 2013 WL 214378, at *2 (D. Utah Jan. 18, 2013). Plaintiff's experts' opinions must be excluded under Rule 403.

C. Dr. Markowitz's opinion is unreliable and inadmissible.

1. Markowitz is not qualified to opine on Pratt & Whitney jet engines.

Under Rule 702, an expert must be qualified. An expert is qualified "by knowledge, skill, experience, training, or education." Fed. Evid. R. 702. Markowitz may be an expert researcher, but he improperly uses that role to stray into areas far outside his expertise and pose as someone qualified to assess the documents he reviews and offer opinions in medical and scientific areas for which he is wholly unqualified. This is true for two reasons. ***First***, his opinions are not founded on specialized knowledge. Instead, Markowitz merely "regurgitates" facts from historical records and reaches his own conclusory opinions about them. An expert, even a historian, cannot "regurgitate[] [facts from historical documents] and reach[] conclusory opinions that are purportedly based on these facts"; rather such "facts should be presented to the jury directly." *In re Trasylol Prods. Liab. Litig. -MDL-1928*, 709 F. Supp. 2d 1323, 1345-46 (S.D. Fla. 2010). It is improper for an expert's report to read "like the fact section of a brief, not the report of an expert witness." *Id.*

***Second,*** Markowitz is not qualified through experience, education, or training to summarize and opine on medical and scientific areas of research. In fact, he admits he has no background in toxicology, chemistry, the air force, or jet engines. Ex. M at Dep. 22-24 [Markowitz Dep.]. Instead, he is a historian who was commissioned by a Plaintiff's firm to compile a list of "historical" documents relating to asbestos, and present that research as an "expert" in all cases

irrespective of the product, issues, or diagnosis. Ex. M at 28-29. But being a historian does not qualify Markowitz as an expert in the other highly technical areas on which he purports to opine. *United States v. Santini*, 656 F.3d 1075, 1078-79 (9th Cir. 2011) (an expert in one field cannot express opinions in another field). Markowitz readily admits that he does not have any information, historical or otherwise, on Pratt & Whitney, jet engines, the military, or encapsulated products allegedly incorporated into jet engines. Ex. M at 14-15 [Markowitz Dep.]. Thus, he is not qualified to offer his opinions on medical and scientific literature in those areas.

2. Markowitz may not act as a conduit for hearsay.

Under Rule 703, an expert can base an opinion on inadmissible hearsay or other facts or data, but only if the hearsay or other facts or data are the kind of information experts in that field reasonably rely on in forming such an opinion. Moreover, a witness must be truly testifying as an expert and not just as a conduit for hearsay. *United States v. Garcia*, 793 F.3d 1194, 1212–16 (10th Cir. 2015). Markowitz, however, is exactly that— a hearsay conduit. He is a historian who put together an annotated bibliography of areas in which he has no substantive expertise. His work is comprised entirely of hearsay that he merely repeats to the jury through a non-scientific lens.

His "opinions" are based on self-collected documents gathered at the direction of Plaintiffs' attorneys to help them argue their narrative, which they then ask him to do for them. He has no background to offer any testimony on the medical, scientific, safety or engineering significance of any of his documents. Apart from saying so, he can offer no basis or reasoning for what these documents mean and meant to the relevant medical, scientific, and industrial communities. Allowing Markowitz to offer that testimony enables Plaintiff to present hearsay in the form of baseless opinions about medical and scientific documents that he reads and summarizes without any scientific background or ability to place into medical, scientific, safety or engineering context.

In sum, Markowitz is an advocate attempting to masquerade as an expert, which is wholly improper under Rule 703.

## IV. CONCLUSION

For these reasons, this Court should preclude the Plaintiff's experts' specific causation opinions founded on the cumulative exposure theory, and Dr. Markowitz's subjective "historical" opinions.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A) , the undersigned counsel hereby certifies that she made several attempts to reach Plaintiff's counsel by telephone, text and email, leaving messages each time, but was unable to speak to Plaintiff's counsel prior to this filing.

Dated: December 29, 2023

Respectfully submitted,

**LUKS, SANTANIELLO,**
**PETRILLO, COHEN & PETERFRIEND**
*Attorneys for Defendant* RTX Corporation
150 West Flagler Street - 26th Floor
Miami, FL 33130
Telephone: (305) 377-8900
Facsimile: (305) 377-8901

By: /s/ *Monica L. Irel*
Stuart L. Cohen
scohen@insurancedefense.net
Florida Bar No. 0927066
Monica L. Irel
Florida Bar No.: 0142395
mirel@insurancedefense.net

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via CM/ECF, to all counsel of record this 29th day of December 2023.

**LUKS, SANTANIELLO,**
**PETRILLO, COHEN & PETERFRIEND**
*Attorneys for Defendant* RTX Corporation
150 West Flagler Street - 26th Floor
Miami, FL 33130
Telephone: (305) 377-8900
Facsimile: (305) 377-8901

By: /s/ *Monica L. Irel*
Stuart L. Cohen
scohen@insurancedefense.net
Florida Bar No. 0927066
Monica L. Irel
Florida Bar No.: 0142395
mirel@insurancedefense.net